HERBERT I. MOELIS & others[1] *vs.* BERKSHIRE LIFE INSURANCE COMPANY (and two companion cases[2]).

Berkshire. April 8, 2008. - May 22, 2008.

Present: MARSHALL, C.J., GREANEY, IRELAND, SPINA, COWIN, & CORDY, JJ.

*Insurance,* Life insurance. *Consumer Protection Act,* Unfair or deceptive act, Insurance, Class action. *Practice, Civil,* Class action. *Due Process of Law,* Class action, Jurisdiction over nonresident. *Limitations, Statute of.*

A Superior Court judge properly denied nationwide class certification under G. L. c. 93A, § 9 (2), for purchasers of a certain Massachusetts company's life insurance policies, where the court could not properly exercise personal jurisdiction over non-Massachusetts residents in the putative class, given that there was no opt out provision, and that the mere purchasing of policies by out-of-State plaintiffs through their local agents did not satisfy the minimum contacts test necessary for assertion of jurisdiction [486-489]; likewise, the judge did not abuse her discretion in denying, without prejudice to renew, the plaintiffs' motion to certify a Statewide class, where the members were not similarly situated, in that the inquiry relative to when the statute of limitations had begun to run with respect to each of the putative class members was highly fact specific [489-492].

CIVIL ACTIONS commenced in the Superior Court Department on August 19, 1998, December 11, 1998, and July 26, 1999, respectively.

After consolidation, motions for class certification were heard by *Margot Botsford,* J., and the matter was reported by her to the Appeals Court. The Supreme Judicial Court on its own initiative transferred the case from the Appeals Court.

*Richard J. Schager, Jr.,* of New York (*Douglas M. Brooks* with him) for Herbert I. Moelis & others.

*Brandon F. White* (*Michael B. Keating* & *Kirk G. Hanson* with him) for Berkshire Life Insurance Company.

---

[1]Ellen M. Moelis and Stephen Ritchie, as trustee of the Herbert I. Moelis Irrevocable Trust.

[2]Richard F. Tucker & another *vs.* Berkshire Life Insurance Company; Edward F. Coyman & another *vs.* Berkshire Life Insurance Company.

The following submitted briefs for amici curiae:

*Kevin P. Roddy,* of New Jersey, *Julie Nepveu, Deborah Zuckerman, & Michael Schuster,* of the District of Columbia, & *Thomas V. Urmy, Jr., Robert E. Ditzion, & Stuart T. Rossman* for American Association of Retired Persons & others.

*Domenic P. Aiello & Joseph F. Ryan* for Life Insurance Association of Massachusetts.

*Lisa Tate, Evan M. Tager, Miriam R. Nemetz, & Richard Pianka,* of the District of Columbia, for American Council of Life Insurers.

*Jo Ann Shotwell Kaplan & Martin Newhouse* for New England Legal Foundation & another.

COWIN, J. The plaintiffs in these consolidated actions, who are purchasers of life insurance from the defendant, Berkshire Life Insurance Company (Berkshire), moved to certify a nationwide class of Berkshire policyholders under G. L. c. 93A, § 9 (2), or, in the alternative, a Massachusetts-based class.[3] The plaintiffs allege that Berkshire engaged in deceptive practices in violation of G. L. c. 93A, §§ 2 and 9.[4] A judge in the Superior Court denied certification of the nationwide class on the ground that the court could not properly exercise personal jurisdiction over non-Massachusetts residents in the putative class. She also denied Statewide certification, concluding that the individual plaintiffs' potential differences with respect to Berkshire's statute of limitations defense precluded certification. The judge denied the motion for Statewide certification without prejudice. She

---

[3]General Laws c. 93A, § 9 (2), provides, in relevant part: "Any persons entitled to bring [a consumer protection] action may, if the use or employment of [an] unfair or deceptive act or practice has caused similar injury to numerous other persons similarly situated and if the court finds in a preliminary hearing that he adequately and fairly represents such other persons, bring the action on behalf of himself and such other similarly injured and situated persons . . . ."

[4]General Laws c. 93A, § 2, states, in relevant part: "Unfair methods of competition and unfair or deceptive acts or practices in the conduct of any trade or commerce are hereby declared unlawful." General Laws c. 93A, § 9(1), provides, in pertinent part, that "[a]ny person . . . who has been injured by another person's use or employment of any method, act or practice declared to be unlawful by [§ 2] or any rule or regulation issued thereunder . . . may bring an action in the superior court . . . for damages and such equitable relief, including an injunction, as the court deems to be necessary and proper."

then reported her decision to the Appeals Court pursuant to Mass. R. Civ. P. 64 (a), as amended, 423 Mass. 1403 (1996). We transferred the case here on our own motion, and now affirm.[5]

*Facts.* Berkshire is a Massachusetts mutual insurance company that sells life insurance policies through its own agents as well as independent insurance brokers in offices across the country.[6] In approximately 1980, Berkshire began marketing the "disappearing premium" concept, a method of paying premiums on a traditional life insurance policy by which a policyholder paid future premiums with dividends instead of receiving such dividends directly. A sufficient accumulation of dividends would allow the policyholder's obligation to pay premiums out of his or her own pocket to "disappear" after a set number of years. Customers were provided with computer-generated illustrations demonstrating when their premiums would likely "disappear."

The plaintiffs in these consolidated actions, who would be the named plaintiffs in the proposed class action, Herbert I. Moelis, Richard F. Tucker, Edward F. Coyman, and Helen F. Coyman, purchased the disappearing premium policies from Berkshire agents or from independent brokers in their respective home States in different years. After various periods of time, each of the plaintiffs learned that his or her premium would not disappear as originally illustrated. Each separately sued Berkshire, claiming that the company engaged in deceptive practices in violation of Massachusetts consumer protection law, G. L. c. 93A, §§ 2 and 9, by failing to inform policyholders adequately that dividend reductions could increase the number of years they had to pay premiums.

The plaintiffs sought to certify a nationwide class under G. L. c. 93A, § 9 (2), of 4,028 policyholders residing in forty-three different States, the District of Columbia, and Puerto Rico, as

[5]We acknowledge the amicus briefs of the American Association of Retired Persons, the National Association of Shareholder and Consumer Attorneys, and the National Consumer Law Center; the American Council of Life Insurers; the Life Insurance Association of Massachusetts; and New England Legal Foundation and Associated Industries of Massachusetts.

[6]A "mutual" insurance company is one whose policyholders possess certain ownership rights in the company, which may include the right to receive a portion of the company's surplus in the form of dividends. B.M. Anderson, Life Insurance §§ 6.3, 6.5 (1991).

well as fourteen policyholders residing outside the United States. The plaintiffs' proposed class included:

> "All persons who own or owned a whole life policy identified as a Disappearing Premium or Premium Offset policy issued by Berkshire Life Insurance Company after January 1, 1980, excluding those policyholders whose policies went out-of-force due to death of the insured prior to the date when the obligations to make out-of-pocket payments was to cease or disappear, and further excluding those policyholders from whom Berkshire obtained a signed Statement entitled "Disappearing Premium Disclosure," a practice Berkshire adopted on or about March 15, 1993."

In the alternative, they petitioned to certify a class of Massachusetts policyholders composed of 718 Massachusetts residents.

*Discussion.* We review the denial of a motion for class certification for an abuse of discretion. *Fletcher* v. *Cape Cod Gas Co.*, 394 Mass. 595, 606-607 (1985).

1. *Nationwide class certification.* The Superior Court judge properly denied the plaintiffs' motion to certify a national class. In *Phillips Petroleum Co.* v. *Shutts*, 472 U.S. 797, 811 (1985) (*Shutts*), the United States Supreme Court held that the due process clause of the Fourteenth Amendment to the United States Constitution gave "some protection" to nonresident plaintiffs, as well as nonresident defendants, from the jurisdiction of a forum State seeking to adjudicate their claims.[7] Nonresident defendants must have established sufficient minimum contacts in a forum State for a court of that State to assert personal jurisdiction over them. See, e.g., *International Shoe Co.* v. *Washington*, 326 U.S. 310, 319-320 (1945). However, "[b]ecause States place fewer burdens upon absent class plaintiffs than they do upon absent defendants in nonclass suits, the Due Process Clause need not and does not afford the former as much protection from [S]tate-court jurisdiction as it does the latter." *Shutts*, *supra* at 811. Thus, a State court may bind an absent

---

[7]The Fourteenth Amendment to the United States Constitution states, in relevant part: "No state shall make or enforce any law which shall abridge the privileges or immunities of the citizens of the United States; nor shall any State deprive any person of life, liberty, or property, without due process of law . . . ."

plaintiff in an action for money damages even if he or she lacks minimum contacts with the forum, so long as basic due process protections are provided. *Id.* at 811-812. Those protections include notice, an opportunity to be heard and to participate in the litigation, and the opportunity for the plaintiff to remove himself or herself from the class. *Id.* at 812.

In the instant case, the Superior Court judge correctly refused to certify a national class on the ground that the court could not properly assert personal jurisdiction over out-of-State class plaintiffs. The judge first determined that neither G. L. c. 93A, § 9 (2), nor Mass. R. Civ. P. 23, 365 Mass. 767 (1974), permits a judge to allow individual parties to remove themselves or "opt out" of a class action. See *Weld* v. *Glaxo Wellcome Inc.*, 434 Mass 81, 84 (2001); *Fletcher* v. *Cape Cod Gas Co.*, *supra* at 602. Thus, the due process protections prescribed by *Shutts* as an alternative to the traditional minimum contacts test could not be satisfied.

The judge then turned to the traditional "minimum contacts" test to evaluate whether asserting jurisdiction over nonresident plaintiffs comported with due process. The plaintiffs here, relying on the statement in *Shutts* that the due process clause affords less protection to nonresident plaintiffs than it does to nonresident defendants, *Shutts*, *supra* at 811, argued that the judge should require less substantial contact between nonresident plaintiffs and the forum State than that required by the traditional minimum contacts of nonresident defendants. The judge rejected this argument. The plaintiffs cited no cases, and the judge found none, identifying the parameters of a lesser standard for minimum contacts applicable to nonresident plaintiffs in a class action.

There was no error here in applying the traditional defendant minimum contacts test to nonresident plaintiffs in the absence of an opt out provision. The *Shutts* decision did not explicitly address the personal jurisdiction standard to apply to nonresident plaintiffs when one of the *Shutts* alternative due process protections is absent. However, at least two United States Courts of Appeals have interpreted *Shutts* as holding that a court may assert personal jurisdiction over a nonresident plaintiff if basic due process protections exist, or if the minimum contacts test is satisfied. See, e.g., *Carlough* v. *Amchem Prods., Inc.*, 10 F.3d

189, 199 (3d Cir. 1993) (if member has not been given opportunity to opt out in class action, he must either have minimum contacts with forum or consent to jurisdiction). See also *In re Joint E. & S. Dist. Asbestos Litig.*, 78 F.3d 764, 777-778 (2d Cir. 1996) (courts may assert personal jurisdiction over nonresident plaintiffs even in absence of one of *Shutts* due process protections if another basis for jurisdiction is available). We find their reasoning persuasive, and follow it here.

An exercise of personal jurisdiction comports with due process when the nonresident established minimum contacts in the forum. *Tatro* v. *Manor Care, Inc.*, 416 Mass. 763, 772 (1994). Minimum contacts must have a basis in some act by which the nonresident purposefully avails himself of the privilege of conducting activities in Massachusetts, thus invoking the benefits and protections of its laws. *Good Hope Indus., Inc.* v. *Ryder Scott Co.*, 378 Mass. 1, 7 (1979). In addition, the exercise of jurisdiction over a nonresident must not offend traditional notions of fair play and substantial justice. *Id.*

Here, the only contacts the nonresident policyholders have with Massachusetts is their purchase of an insurance policy from Berkshire, a Massachusetts company, through agents located in their home States, and their mailing of annual premium payments to Berkshire in Massachusetts. We conclude that these facts are not sufficient to warrant the assertion of personal jurisdiction. See *New Hampshire Ins. Guar. Assoc.* v. *Markem Corp.*, 424 Mass. 344, 349 (1997) (personal jurisdiction lacking over policyholders where insurance company contracted for insurance policy in New Hampshire, activity that was insured did not occur in Massachusetts, and only relevant contacts were mailing of policy from Massachusetts to New Hampshire, policyholder's payment of premiums to insurer's offices in Massachusetts, and policyholder's submission of claims to Massachusetts). See also *"Automatic" Sprinkler Corp. of Am.* v. *Seneca Foods Corp.*, 361 Mass. 441, 444-445 (1972) (no personal jurisdiction over New York company that signed purchase order to buy goods from Massachusetts seller, mailed purchase order to Massachusetts, received invoice from Massachusetts and sent check to Massachusetts). The instant case is distinguishable from situations where nonresidents more intentionally take ad-

vantage of favorable State policies. See, e.g., *Kramersmeier* v. *R.G. Dickinson & Co.*, 440 N.W.2d 873, 877 (Iowa 1989) (Iowa court had personal jurisdiction over nonresident bondholders in proposed class action alleging misrepresentation in municipal bond offering; bondholders could reasonably expect Iowa court to adjudicate their claims where they received periodic payment of principal and interest from Iowa and availed themselves of tax-free benefits of long-term investment in Iowa municipality).

2. *Statewide class certification.* The Superior Court judge did not abuse her discretion in denying, without prejudice to renew, the plaintiffs' motion to certify a Statewide class under G. L. c. 93A, § 9 (2). Section 9 (2) requires satisfaction of the same elements of numerosity, commonality, typicality, and adequacy of representation as are required by Mass. R. Civ. P. 23 (a).[8] *Fletcher* v. *Cape Cod Gas Co.*, 394 Mass. 595, 605 (1985). Un-

---

[8]Rule 23 of the Massachusetts Rules of Civil Procedure, 365 Mass. 767 (1974), provides:

> "(a) Prerequisites to Class Action. One or more members of a class may sue or be sued as representative parties on behalf of all only if (1) the class is so numerous that joinder of all members is impracticable, (2) there are questions of law or fact common to the class, (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class, and (4) the representative parties will fairly and adequately protect the interests of the class.

> "(b) Class Actions Maintainable. An action may be maintained as a class action if the prerequisites of subdivision (a) are satisfied, and the court finds that the questions of law or fact common to the members of the class predominate over any questions affecting only individual members, and that a class action is superior to other available methods for the fair and efficient adjudication of the controversy.

> "(c) Dismissal or Compromise. A class action shall not be dismissed or compromised without the approval of the court. The court may require notice of such proposed dismissal or compromise to be given in such manner as the court directs.

> "(d) Orders to Insure Adequate Representation. The court at any stage of an action under this rule may require such security and impose such terms as shall fairly and adequately protect the interests of the class in whose behalf the action is brought or defended. It may order that notice be given, in such manner as it may direct, of the pendency of the action, of a proposed settlement, of entry of judgment, or of any other proceedings in the action, including notice to the absent persons that they may come in and present claims and defenses if they so

like rule 23, however, § 9 (2) does not require that common issues predominate over individual ones, or that a class action be superior to other methods of litigation. *Aspinall* v. *Philip Morris Cos.*, 442 Mass. 381, 407 n.8 (2004). Nonetheless, in determining whether members of the proposed class are "similarly situated" and have suffered a "similar injury" under § 9 (2), the court has discretion to consider issues of predominance and superiority. *Fletcher* v. *Cape Cod Gas Co.*, *supra* at 605-606.

The judge concluded that the proposed class satisfied the numerosity, commonality, typicality, and adequacy of representation elements. She also determined that class members were "similarly situated" under § 9 (2) with respect to the question whether Berkshire engaged in deceptive sales practices. However, the judge concluded that Berkshire had raised a substantial statute of limitations defense to the plaintiffs' claims. Berkshire contended in this regard that the inquiry relative to when the statute of limitations had begun to run with respect to each of the putative class members was highly fact specific. As such, the judge determined that the members were not "similarly situated," and a class action was inappropriate.

The judge acted within her discretion in deciding that, at the present juncture, individual differences with respect to the statute of limitations appeared to be significant and appeared not to lend themselves to adjudication on a representative basis. Affirmative defenses should be considered in making class certification decisions. *Waste Mgt. Holdings, Inc.* v. *Mowbray*, 208 F.3d 288, 295 (1st Cir. 2000). Where factual and legal issues with respect to a statute of limitations defense are amenable to resolution on a class-wide, representative basis, certification of a class is proper. *Id.* at 296-297 (court properly certified class in breach of warranty claim against company that used its stock to purchase businesses where statute of limitations defense was unlikely to affect most class members, and fact that company had exclusive

desire. Whenever the representation appears to the court inadequate fairly to protect the interests of absent parties who may be bound by the judgment, the court may at any time prior to judgment order an amendment of the pleadings, eliminating therefrom all reference to representation of absent persons, and the court shall order entry of judgment in such form as to affect only the parties to the action and those adequately represented."

control over collection and release of its financial data established common factual predicate for tolling statute). However, where individualized inquiry is necessary to resolve a statute of limitations defense, a variety of jurisdictions have found class certification to be inappropriate. See, e.g., *Barnes* v. *American Tobacco Co.*, 161 F.3d 127, 149 (3d Cir. 1998), cert. denied, 526 U.S. 1114 (1999) (declining to certify class of smokers because, among other reasons, need to conduct individualized inquiry into statute of limitations defense for each plaintiff "augurs that a class action will devolve into a lengthy series of individual trials").

In Massachusetts, a statute of limitations begins to run when the plaintiff learned or should reasonably have learned that he has been harmed. See *Szymanski* v. *Boston Mut. Life Ins. Co.*, 56 Mass. App. Ct. 367, 371 (2002), citing *Williams* v. *Ely*, 423 Mass. 467, 475 (1996). In the instant case, the inquiry regarding the statute of limitations could require determining when each plaintiff knew or reasonably should have known that the policy would not perform as expected because the illustrations provided by Berkshire were misleading. The judge acted within her discretion in concluding that, given the potentially different information available to each of the plaintiffs, this appeared to be a highly fact-specific inquiry. For instance, the judge noted that while Berkshire failed directly to inform or notify policyholders that even a small change in the interest rate could have a significant impact on the elimination of out-of-pocket premiums, it did emphasize, in materials distributed to its sales agents, that dividends could be reduced given changes in interest rates, and it suggested the provision of updated illustrations for certain policies that were in force. Thus, some members of the class might have received updated illustrations, which might have reasonably alerted them that their policies would not perform as expected. The resolution of the statute of limitations issue for a particular plaintiff might depend on when, and whether, these updated illustrations were received.

As the judge also noted, however, if one or more of the named plaintiffs were to proceed to trial on their claims, the statute of limitations issue would be tried as part of the case, and those plaintiffs might petition again to certify a Statewide class. If that were to happen, the judge would be in a better position to

assess whether and to what extent the statute of limitations defense might be subject to resolution on a class-wide basis.

We affirm the denial of certification of the nationwide class and the denial without prejudice of the plaintiffs' motion for Statewide class certification.

*So ordered.*